KRISEYA J. LABASTIDA, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 25685

October 11, 1999

986 P.2d 443

*Glynn Burroughs Cartledge,* Reno, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Terrence P. McCarthy,* Deputy District Attorney, Washoe County, for Respondent.

*Richard F. Cornell,* Reno, for Amicus Curiae.

Before ROSE, C. J., YOUNG, MAUPIN and SHEARING, JJ.

## OPINION ON REHEARING

*Per Curiam:*

In Labastida v. State, 112 Nev. 1502, 931 P.2d 1334 (1996), this court affirmed appellant Kriseya J. Labastida's judgment of conviction of one count of second degree murder and one count of felony child neglect. Labastida was sentenced to serve a term of life in the Nevada State Prison with the possibility of parole for the murder and a consecutive term of twenty years for child neglect. Labastida has petitioned this court for rehearing.[1] The

---

[1]Two interested organizations, the National Association of State Vocal Organizations and the Committee to Aid Abused Women, have submitted amicus curiae briefs on rehearing, together with motions for leave to file the briefs. The state filed an opposition to the motions. Cause appearing, we grant the motions for leave to file the proposed amicus curiae briefs. *See* NRAP 29. The clerk of this court shall file the previously received briefs and the reply to the state's opposition.

state opposes the petition. As discussed below, we conclude that the prior majority opinion misapprehended material matters of fact and law and that rehearing is warranted. Accordingly, we grant rehearing and issue this opinion in the place of the previous decision in this appeal.[2] *See* NRAP 40(c)(2).

The facts of this case are recounted in detail in the prior opinion. *Labastida,* 112 Nev. at 1504-09, 931 P.2d at 1335-39. Briefly, Michael Strawser, Labastida's husband, admitted to abusing their infant son and testified that Labastida did not know what he was doing. Labastida, Strawser and their infant child lived in a dark basement apartment. Although the infant bore marks of abuse in various stages of healing, Strawser admitted that he committed the most severe abuse, the abuse that caused death, in the last few days of the infant's life. To silence the baby, Strawser stuck his finger down his throat while he abused him. This ruptured the infant's throat, causing massive infection and ultimately death. Labastida called for an ambulance when she noticed that the infant had stopped breathing. It was so dark that when emergency personnel arrived, they had to take the infant to the kitchen to see. The infant's body displayed multiple bruises, bitemarks, broken ribs and other injuries.

## DISCUSSION

Among other things, Labastida contends on rehearing that the prior majority opinion of this court: (1) misapprehended that sufficient evidence supported the jury's verdict; and (2) misconstrued the law permitting a conviction of second degree murder under NRS 200.070. Having revisited these issues, and for the reasons that follow, we now conclude that Labastida's conviction of second degree murder must be reversed.

In the prior opinion, a majority of this court held that the jury could have properly drawn "alternative inferences" from the evidence, and that based on these inferences, Labastida was properly convicted of second degree murder. Specifically, the majority observed:

> First, the jury could have found Labastida guilty of child abuse and first-degree murder based upon the grounds that (1) she aided and abetted Strawser in the unlawful killing by observing or being manifestly aware that Strawser was willfully causing the infant to suffer dangerously severe and unjustifiable injury and pain as a result of abuse, and (2) by doing nothing to stop this abuse when she was responsible

---

[2]We grant Labastida's motion of August 27, 1998, seeking permission to file supplemental authorities. The clerk of this court shall file the authorities provisionally submitted with that motion.

for the child and it was clearly possible for her to have taken preventive measures. *See* NRS 195.020; 200.030(1)(a); 200.508(1)(a). The jury could then have elected to give Labastida the benefit of leniency based upon a finding that her involvement was much less than that of Strawser. Under such circumstances, Labastida can hardly complain at having been the recipient of the jury's mercy.

*Labastida,* 112 Nev. at 1509-10, 931 P.2d at 1339 (citations omitted). We have re-examined this holding in light of relevant statutes, precedents of this court, the instructions given to the jury, and the evidence in the record. We now conclude that the above-quoted language erroneously proposed that the verdict of second degree murder could have resulted from a finding of first degree murder tempered by a desire for leniency. Further, we conclude that the evidence and the applicable law do not support a finding that Labastida directly committed acts or aided and abetted Strawser in the commission of acts so as to warrant her conviction of second degree murder. *Cf.* State v. Lindsey, 19 Nev. 47, 5 P. 822 (1882) (where the law and facts establish murder in the first degree, defendant may not complain of jury verdict finding defendant guilty of second degree murder).

*First Degree Murder*

NRS 200.030(1)(a) provides in pertinent part that "[m]urder of the first degree is murder which is . . . [p]erpetrated by means of . . . torture or child abuse, or by any other kind of willful, deliberate and premeditated killing."[3] "Child abuse" for the purposes of this subsection is separately defined in NRS 200.030(6)(a) as "physical injury of a nonaccidental nature to a child under the age of 18 years."

The jury instructions in this case accurately advised the jury of these provisions. In accordance with those instructions, there were three separate theories under which the jury could have considered Labastida's culpability for first degree murder, *i.e.,* that with malice aforethought: (1) she directly committed or aided and abetted Strawser in committing a murder perpetrated by means of child abuse; (2) she directly committed or aided and abetted Strawser in committing a murder perpetrated by means of torture; and (3) she directly committed or aided and abetted Strawser in committing a willful, deliberate and premeditated murder.

---

[3]The 1999 legislature amended NRS 200.030 by removing "child abuse" from the definition of first degree murder set forth in subsection 1(a), and by including child abuse among the felonies stated in subsection 1(b) as sufficient to support a conviction of first degree felony murder. The amendment does not affect this court's disposition of this case.

More specifically, the jury was instructed pursuant to NRS 200.030(1)(a) that ''[m]urder of the first degree is murder which is perpetrated by means of torture or child abuse or by any other kind of willful, deliberate and premeditated killing.'' The instructions defined ''murder'' as ''the unlawful killing of a human being, with malice aforethought, either express or implied.'' ''[M]urder by child abuse'' was defined as ''an unlawful killing resulting from the infliction of physical injury of a nonaccidental nature to a child under the age of 18 years.''

We have carefully reviewed all of the instructions, and it is clear that the jury was not instructed on the theory of first degree murder articulated in this court's prior majority opinion. The instructions simply cannot be fairly read to advise the jury that it could find Labastida guilty of first degree murder: if she aided and abetted Strawser in the unlawful killing ''by observing or being manifestly aware'' of the abuse Strawser was inflicting on the child, and ''by doing nothing to stop this abuse when she was responsible for the child and it was clearly possible for her to take preventative measures.'' Therefore, the prior majority opinion's conclusion that the jury ''could have found Labastida guilty of child abuse and first degree murder'' on these grounds did not correctly reflect the instructions actually provided to the jury.

 ██

Moreover, on rehearing, we are no longer persuaded that the grounds set forth in the prior majority opinion as justifying a finding of first degree murder correctly state the statutory elements of first degree murder. The suggestion that one who is responsible for a child may passively aid and abet first degree murder ''by observing and being manifestly aware'' of acts of child abuse, and ''by doing nothing to stop this abuse'' when it is possible to take preventative measures improperly merges concepts of ''abuse'' and ''neglect,'' and is inconsistent with the elements of first degree murder defined in NRS 200.030(1)(a). As the prior majority opinion recognizes, the terms ''abuse'' and ''neglect'' have distinctive meanings and cannot be applied interchangeably.[4] The use of the term ''child abuse'' and not ''child neglect'' in NRS

---

[4]On appeal, Labastida argued that her acquittal of child abuse required reversal of her child neglect conviction on double jeopardy grounds. She contended in part that, under NRS 200.508, the terms ''abuse'' and ''neglect'' are defined in the conjunctive and refer to the same conduct. The prior majority opinion held, however, that ''NRS 200.508 criminalizes the abuse or neglect of children, and the jury did not err in finding, based on the evidence or out of leniency, that Labastida's actions constituted neglect, but not abuse.'' *Labastida,* 112 Nev. at 1512-13, 931 P.2d at 1341 (emphasis added). Thus, the prior opinion clearly acknowledges a distinction between child abuse and child neglect.

200.030(1)(a) evinces the legislature's intent that different meanings apply to the two terms and that a murder perpetrated by means of "child abuse," and not "child neglect," constitutes first degree murder. Thus, the definition of first degree murder set forth in the prior majority opinion improperly expands the statutory elements of first degree murder to include a murder perpetrated by means of child neglect. Accordingly, we are not willing to read NRS 200.030(1)(a) so as to define first degree murder to include a murder which is perpetrated by means of child neglect. There is no statutory basis for doing so.

We also note that the jury specifically found Labastida *not guilty* of the separate crime of child abuse causing substantial bodily harm in violation of NRS 200.508. This finding provides an additional reason to disavow the prior opinion's conclusion that the jury could have found Labastida guilty of first degree murder.

The jury was advised in Instruction No. 34:

> NRS 200.508 provides: Any person who willfully causes a child who is less than eighteen years of age to suffer unjustifiable physical pain or suffering as a result of abuse or neglect or to be placed in a situation where the child may suffer physical pain or mental suffering as a result of abuse or neglect is guilty of child abuse.[5]

Instruction No. 28 provided:

> Every person concerned in the commission of a felony, whether he or she directly commits the act constituting the offense, or aids and abets in its commission, and whether present or absent; and every person who, directly or indirectly, counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony is a principal, and shall be proceeded against and punished as such.

Instruction No. 29 provided:

> [T]he evidence must demonstrate that the Defendant knowingly and intentionally aided and abetted another in the acts which resulted in death.

Under the evidence presented in this case, the instructions respecting the separate offense of child abuse in violation of NRS 200.508 necessarily encompassed the definition provided to the jury of murder by child abuse. The jury acquitted Labastida of

---

[5]Instruction No. 30 also advised: "[t]he word 'willfully' when used in criminal statutes relates to an act or omission which is done intentionally, deliberately, or designedly, as distinguished from an act or omission done accidentally, inadvertently or innocently."

willfully committing or aiding and abetting in the commission of any of the conduct defined in Instruction No. 34. Under these circumstances, we now conclude that it was inappropriate for this court to speculate on appeal that the jury nonetheless could have found that she aided and abetted Strawser in committing first degree murder.

Similarly, with respect to the theory that Labastida committed murder by torture, Jury Instruction No. 22 advised:

> The essential elements of murder by means of torture are: (1) the act or acts which caused the death must involve a high degree or probability of death, and (2) the defendant must commit such act or acts with the intent to cause pain or suffering for the purpose of revenge, persuasion or for any sadistic purpose. The crime of murder by torture does not necessarily require proof the defendant intended to kill the deceased nor does it necessarily require any proof the decedent suffered pain.

The evidence presented below simply does not justify an assumption that the jury could have found Labastida guilty of committing an act or acts with the intent to cause the child pain or suffering and at the same time acquitted her of willfully causing the child to suffer physical pain or mental suffering, either directly or by aiding and abetting Strawser.

Our review of the record also reveals insufficient evidence to support a conviction of first degree murder on the theory that Labastida directly committed or aided and abetted Strawser in committing a willful, deliberate and premeditated murder. To find Labastida guilty of first degree murder required more than a showing that her child died and that she was there. Such a finding required proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. In re Winship, 397 U.S. 358, 364 (1970), *cited in* Martineau v. Angelone, 25 F.3d 734, 739 (9th Cir. 1994) (reversing Nevada conviction of felony child abuse for insufficient evidence). As JUSTICE SHEARING's concurrence to the previous majority opinion cogently argued, there is insufficient evidence in the record upon which the jury could have found beyond a reasonable doubt that Labastida directly inflicted any injury on the child or that she knowingly and intentionally aided and abetted Strawser. We agree with the concurrence on this point. The evidence clearly established that Strawser, not Labastida, personally inflicted the child's fatal injuries. Labastida's mere presence in the home, without more, is insufficient as a matter of law to support her conviction as an aider and abettor. *See* King v. State, 105 Nev. 373, 376, 784 P.2d 942, 943-

44 (1989) (reversing convictions of involuntary manslaughter of a child); *see also* Skinner v. Sheriff, 93 Nev. 340, 341, 566 P.2d 80, 81 (1977) (mere presence at the scene of a crime is insufficient to establish guilt). As the jury was instructed, the evidence must demonstrate beyond a reasonable doubt that Labastida knowingly and intentionally aided and abetted Strawser in the acts which resulted in death. With hindsight, one can say that she should have known that her son was in mortal danger, but that is not the same as finding that she actually knew, which is the finding necessary to support a conviction for aiding and abetting murder.

Thus, for these reasons, as well those previously specified in JUSTICE SHEARING's concurrence to the original majority opinion, we now abandon the prior opinion's conclusion that the jury's verdict of second degree murder could have been the product of a finding of first degree murder tempered by a desire for leniency.[6] Rather, from our review of the record it appears that the jury conscientiously followed the instructions and found that, pursuant to those instructions, the evidence before it did not establish beyond a reasonable doubt that Labastida directly committed or aided and abetted Strawser in committing first degree murder.

## Second Degree Murder

Instruction No. 27 advised the jury of the only remaining basis upon which it could have returned a verdict of guilty of second degree murder in this case:

> If the unlawful killing of a human being is done with malice aforethought, but without deliberation and premeditation, that is, without the willful, deliberate and premeditated intent to take life which is an essential element of first degree murder, or is not perpetrated by means of torture, or child abuse, then the offense is murder in the second degree.

> In practical application this means that the unlawful killing of a human being with malice aforethought, but without a deliberately formed and premeditated intent to kill, is murder of the second degree when the killing results from an unlawful act, the natural consequences of which are dangerous to life, which act is intentionally performed by a person who knows that his conduct endangers the life of another, even though the person has not specifically formed an intention to kill.

[6]We further reject the suggestion in the prior opinion that out of leniency the jury might have found that Labastida's actions constituted the crime of child neglect, but not child abuse.

The legislature has defined the offense of felony child neglect, of which Labastida was convicted, as an offense committed by a person who ''[i]s responsible for the safety or welfare of a child who permits or allows that child to suffer unjustifiable physical pain or mental suffering as a result of abuse or neglect or to be placed in a situation where the child may suffer physical pain or mental suffering as a result of abuse or neglect'' and substantial bodily or mental harm results.[7] NRS 200.508(1)(b), (2).

In the previous opinion, the majority ruled that the jury could have properly convicted Labastida of second degree murder under NRS 200.070, based on her commission of felony child neglect resulting in her son's death. The majority noted that in defining what is *not* involuntary manslaughter, NRS 200.070 provides:

> where the involuntary killing occurs in the commission of an unlawful act, which in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense is murder.

*Labastida,* 112 Nev. at 1510, 931 P.2d at 1339.

In Sheriff v. Morris, 99 Nev. 109, 118, 659 P.2d 852, 859 (1983), this court held that NRS 200.070 in conjunction with NRS 200.030(2)[8] permits a charge of second degree felony murder, and that malice supporting a second degree murder conviction can be implied in such a case. Having carefully reviewed this court's holding in *Morris,* however, we are no longer persuaded that the evidence supports a conviction based on the narrow, limited scope of the second degree felony murder rule as defined in *Morris.* Rather, we conclude that the majority's previous analysis was not sufficiently attentive to the limitations announced in *Morris*—limitations that were expressly and specifically designed to attenuate the ''potential'' that the second degree felony murder rule has ''for untoward prosecutions.'' More specifically, *Morris* states:

> We are not unmindful of the potential for untoward prosecutions resulting from this decision. We therefore emphasize that our holding today is limited to the narrow confines of this case wherein we perceive *an immediate and direct causal relationship between the actions of the defendant, if proved, and the minor's demise.* Further, . . . we hold that *a felony which would support the application of this second degree felony murder rule, would have to be one which is*

---

[7]The jury was properly instructed on these statutory elements of child neglect causing substantial bodily harm.

[8]NRS 200.030(2) provides that all murders are of the second degree, except those murders specifically identified in NRS 200.030(1) as of the first degree.

*inherently dangerous in the abstract.* There can be no deterrent value in a second degree felony murder rule unless the felony is inherently dangerous since it is necessary that a potential felon foresees the possibility of death or injury resulting from the commission of the felony.

*Id.* (citations omitted) (emphasis added).

In defining the requirement for an immediate and direct causal relationship between the actions of the defendant and the death of a victim, *Morris* further explains that "[b]y the term 'immediate' we mean without the intervention of some other source or agency." *Id.* at 118-19, 659 P.2d at 1339-40.

Thus, under the narrow limits established in *Morris,* the second degree felony murder rule applies only where the felony is inherently dangerous, where death or injury is a directly foreseeable consequence of the illegal act, and where there is an immediate and direct causal relationship—without the intervention of some other source or agency—between the actions of the defendant and the victim's death. Labastida's son did not die as an *immediate and direct* consequence of Labastida's neglect, without the intervention of some other source or agency. Rather, he died from Michael Strawser's abuse.[9] Consequently, the evidence supporting Labastida's commission of felony child neglect in this case cannot support her second degree murder conviction under this court's decision in *Morris.*

We further conclude that insufficient evidence was presented to reasonably support a finding of implied malice required for a second degree murder conviction even without application of the second degree felony murder rule.[10] Labastida did not commit any affirmative act that harmed her son. There is insufficient evidence that she ever knew that her child was in serious or mortal danger prior to the time she telephoned for an ambulance. Thus, there is

---

[9]It is these factors which distinguish this case from this court's recent decision in Noonan v. State, 115 Nev. 184, 980 P.2d 637 (1999). In *Noonan,* this court concluded that Noonan's act of "leaving a sixteen-month-old child alone in a bathtub for twenty-five to thirty minutes [was] inherently dangerous and Noonan should have foreseen the possibility of death or injury resulting." *Id.* at 189, 980 P.2d at 640. This court further perceived "an immediate and direct causal relationship between Noonan's acts and [the child's] demise." *Id.* Thus, unlike the actions of Labastida in this case, the specific evidence of felony child neglect in *Noonan* was sufficient under *Morris* to support a conviction of second degree felony murder.

[10]In any event, given the manner in which Instruction No. 27 advised the jury, it appears that the jury could not have returned a verdict of guilty of second degree murder without applying the second degree felony murder rule.

insufficient evidence to support a reasonable inference that Labastida had the criminal intent required for a conviction of murder. *See* NRS 193.190 (to constitute the crime charged there must be unity of act and intent).

## CONCLUSION

On rehearing we conclude that Labastida could not have been properly convicted of either first or second degree murder.[11] Accordingly, we grant rehearing, we affirm Labastida's conviction of felony child neglect, and we reverse her conviction of second degree murder.[12]

---

[11]In light of this decision, we conclude that it is unnecessary to address Labastida's other contentions respecting her conviction for second degree murder. Further, we reject her contentions on rehearing respecting her conviction for child neglect.

[12]This matter was submitted for decision prior to the expansion of the court from five to seven justices on January 4, 1999. Only those justices remaining on the court at the time this petition was submitted for decision participated in this decision.