137 Nev., Advance Opinion 76

IN THE SUPREME COURT OF THE STATE OF NEVADA

AEROGROW INTERNATIONAL, INC.,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
ELIZABETH GONZALEZ, DISTRICT
JUDGE,
Respondents,
    and
BRADLEY LOUIS RADOFF; FRED M.
ADAMCYZK; THOMAS C. ALBANESE;
WILLIAM A. ALMOND, III; MICHAEL
S. BARISH; GEORGE C. BETKE, JR.
2019 TRUST; DIANA BOYD; ANNE
CAROL DECKER; THOMAS H.
DECKER; THE DEUTSCH FAMILY
TRUST; JOHN C. FISCHER; ALFREDO
GOMEZ; ALFREDO GOMEZ FMT CO
CUST IRA ROLLOVER; LAWRENCE
GREENBERG; PATRICIA
GREENBERG; KAREN HARDING; H.L.
SEVERANCE, INC. PROFIT SHARING
PLAN & TRUST; H.L. SEVERANCE,
INC. PENSION PLAN & TRUST;
DANIEL G. HOFSTEIN; KEVIN
JOHNSON; CANDACE KAYE; LAURA
J. KOBY; CAROLE L. MCLAUGHLIN;
BRIAN PEIERLS; JOSEPH E. PETER;
ALEXANDER PERELBERG; AMY
PERELBERG; DANA PERELBERG;
GARY PERELBERG; LINDA
PERELBERG; THE REALLY COOL
GROUP; RICHARD ALAN RUDY
REVOCABLE LIVING TRUST; JAMES
D. RICKMAN, JR.; JAMES D.
RICKMAN, JR. IRREVOCABLE TRUST;

No. 82895



FILED

DEC 09 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

21-35060

PATRICIA D. RICKMAN
IRREVOCABLE TRUST; ANDREW
REESE RICKMAN TRUST; SCOTT
JOSEPH RICKMAN IRREVOCABLE
TRUST; MARLON DEAN
ALESSANDRA TRUST; BRYAN
ROBSON; WAYNE SICZ IRA; WAYNE
SICZ ROTH IRA; THE CAROL W.
SMITH REVOCABLE TRUST; THOMAS
K. SMITH; SURAJ VASANTH; CATHAY
C. WANG; LISA DAWN WANG; DARCY
J. WEISSENBORN; THE MARGARET S.
WEISSENBORN REVOCABLE TRUST;
THE STANTON F. WEISSENBORN
IRA; THE STANTON F.
WEISSENBORN REVOCABLE TRUST;
THE STANTON F. WEISSENBORN
IRREVOCABLE TRUST; THE NATALIE
WOLMAN LIVING TRUST; ALAN
BUDD ZUCKERMAN; JACK WALKER;
STEPHEN KAYE; THE MICHAEL S.
BARISH IRA; AND THE ALEXANDER
PERELBERG IRA,
Real Parties in Interest.

Original petition for a writ of mandamus challenging a district court order directing compliance with Nevada's Dissenter's Rights Statutes.

*Petition granted.*

Brownstein Hyatt Farber Schreck, LLP, and Kirk B. Lenhard, Maximilien D. Fetaz, and Travis F. Chance, Las Vegas; Jones Day and Ashley F. Heintz, Atlanta, Georgia; Jones Day and Marjorie P. Duffy, Columbus, Ohio, for Petitioner.

Marquis Aurbach Coffing and Alexander K. Calaway and Terry A. Coffing, Las Vegas, for Real Party in Interest Bradley Louis Radoff.

Simons Hall Johnston PC and Kendra J. Jepsen and J. Robert Smith, Reno,
for Real Parties in Interest Fred M. Adamcyzk; Thomas C. Albanese; William A. Almond, III; Michael S. Barish; George C. Betke, Jr. 2019 Trust; Diana Boyd; Anne Carol Decker; Thomas H. Decker; the Deutsch Family Trust; John C. Fischer; Alfredo Gomez; Alfredo Gomez FMT Co Cust IRA Rollover; Lawrence Greenberg; Patricia Greenberg; Karen Harding; H.L. Severance, Inc. Profit Sharing Plan & Trust; H.L. Severance, Inc. Pension Plan & Trust; Daniel G. Hofstein; Kevin Johnson; Candace Kaye; Laura J. Koby; Carole L. McLaughlin; Brian Peierls; Joseph E. Peter; Alexander Perelberg; Amy Perelberg; Dana Perelberg; Gary Perelberg; Linda Perelberg; the Really Cool Group; Richard Alan Rudy Revocable Living Trust; James D. Rickman, Jr.; James D. Rickman, Jr. Irrevocable Trust; Patricia D. Rickman Irrevocable Trust; Andrew Reese Rickman Trust; Scott Joseph Rickman Irrevocable Trust; Marlon Dean Alessandra Trust; Bryan Robson; Wayne Sicz IRA; Wayne Sicz Roth IRA; the Carol W. Smith Revocable Trust; Thomas K. Smith; Suraj Vasanth; Cathay C. Wang; Lisa Dawn Wang; Darcy J. Weissenborn; the Margaret S. Weissenborn Revocable Trust; The Stanton F. Weissenborn IRA, the Stanton F. Weissenborn Revocable Trust; the Stanton F. Weissenborn Irrevocable Trust; the Natalie Wolman Living Trust; Alan Budd Zuckerman; Jack Walker; Stephen Kaye; the Michael S. Barish IRA; and the Alexander Perelberg IRA.

---

BEFORE THE SUPREME COURT, PARRAGUIRRE, STIGLICH, and SILVER, JJ.

## OPINION

By the Court, PARRAGUIRRE, J.:

NRS 92A.300 through .500 are colloquially referred to as Nevada's "Dissenter's Rights Statutes." They provide the framework by which stockholders of a corporation may dissent from certain actions the corporation plans to undertake, such as when the corporation plans to merge with another corporation. As relevant here, NRS 92A.410, .420, .430,

and .440 generally set forth a four-step process by which a stockholder who objects to a proposed merger may seek the fair value of the stockholder's shares from the corporation if the stockholder believes the proposed price for those shares, as set forth in the corporation's proposed merger, is inadequate. In the event that a stockholder (the beneficial stockholder) owns his or her shares indirectly, such as through a brokerage firm (the stockholder of record),[1] a fifth statute, NRS 92A.400(2)(a), requires the beneficial stockholder to obtain the stockholder of record's consent before the beneficial stockholder may dissent from the merger.

At issue in this matter is when, in the four-step process, a beneficial stockholder must obtain the consent of the stockholder of record. The issue is governed by NRS 92A.400(2)(a), which provides that "[a] beneficial stockholder may assert dissenter's rights as to shares held on his or her behalf only if the beneficial stockholder . . . [s]ubmits to the subject corporation the written consent of the stockholder of record to the dissent *not later than the time the beneficial stockholder asserts dissenter's rights.*" (Emphasis added.) As explained below, we conclude that NRS 92A.400(2)(a), when read in conjunction with the four-step process outlined in NRS 92A.410-.440, unambiguously requires a beneficial holder to obtain the record holder's consent at step two, which is before the vote on the merger is held. Consequently, the district court in the underlying litigation erred in concluding that the real party in interest stockholders (RPIs) did not need to obtain the stockholders of record's consents until step four and

---

[1]In the event of such an ownership arrangement, Nevada's Dissenter's Rights Statutes refer to the actual stockholder as the "[b]eneficial stockholder" and the brokerage firm as the "[s]tockholder of record." *See* NRS 92A.305 (defining "Beneficial stockholder"); NRS 92A.330 (defining "Stockholder of record").

after the petitioner corporation's merger vote was held. We therefore issue a writ of mandamus directing the district court to vacate its order, wherein it: (1) waived RPIs' obligation to provide consents from their stockholders of record; (2) required petitioner to comply with the step-three notification process; and (3) permitted RPIs to exercise their step-four dissenter's rights.

## STATUTORY OVERVIEW

For context, a brief description of the above-mentioned four-step process is warranted. Under step one, NRS 92A.410(1) requires the corporation to provide stockholders of record with notice of the meeting at which the merger vote will take place and to notify the stockholders of record that they "may be entitled to assert dissenter's rights." Under step two, NRS 92A.420(1) requires a stockholder who "wishes to assert dissenter's rights" to notify the corporation before the merger vote is taken that the stockholder "inten[ds] to demand payment for his or her shares if the proposed action is effectuated." At step three, and within ten days after the vote is taken and the merger has been approved, NRS 92A.430 requires the corporation to notify stockholders of record and "any beneficial stockholder who has previously asserted dissenter's rights" that the stockholder must demand payment for the stockholder's shares within a set amount of time. Finally, at step four, NRS 92A.440(1) provides additional procedures that a stockholder who has received the step-three notice "and who wishes to exercise dissenter's rights" must follow in order to demand payment for the stockholder's shares.

## FACTS AND PROCEDURAL HISTORY

Nonparty SMG Growing Media, Inc. (SMG) owned approximately 80-percent of the common stock in petitioner AeroGrow International, Inc. (AeroGrow). SMG, in turn, is wholly owned by nonparty Scotts Miracle-Gro Company (Scotts). In 2020, Scotts and SMG decided to

SUPREME COURT
OF
NEVADA

(O) 1947A

5

merge AeroGrow with SMG, by SMG buying the roughly 20-percent remaining shares of stock from AeroGrow's minority shareholders for $3 per share. In January 2021, AeroGrow notified its shareholders under NRS 92A.410's step one that a vote on the proposed merger agreement would take place in February 2021.

Before that vote took place, AeroGrow received dozens of notices from minority shareholders, including RPIs, indicating that under the second step set forth in NRS 92A.420, they intended to dissent from the merger and demand payment in excess of the proposed $3-per-share buyout price. Some of the notices AeroGrow received were accompanied by written consents from the stockholders of record, but the notices submitted by RPIs were not.

Thereafter, the shareholders voted to approve the merger between AeroGrow and SMG, and AeroGrow promptly tendered to RPIs their respective $3-per-share payments. AeroGrow then sent NRS 92A.430's step-three notices to the dissenting shareholders who had previously provided written consents, but because AeroGrow had given RPIs their $3-per-share payments, it did not send the step-three notices to RPIs.

Thereafter, RPIs filed lawsuits against AeroGrow and its directors. The suits, which were eventually consolidated, generally alleged that AeroGrow and its directors had breached their fiduciary duties in connection with the merger. Following the consolidation, RPIs filed an amended complaint that asserted a claim for declaratory relief alleging that AeroGrow violated the Dissenter's Rights Statutes. RPIs then filed a "Joint Motion to Compel/Determine Compliance with NRS Chapter 92A, or Alternatively, Injunctive Relief." In their motion, RPIs sought an order from the district court (1) declaring that AeroGrow violated the Dissenter's

SUPREME COURT
OF
NEVADA

(O) 1947A

6

Rights Statutes by not sending RPIs the NRS 92A.430 step-three notices, (2) waiving RPIs' obligation to obtain consents from their stockholders of record, and (3) compelling AeroGrow to send RPIs the notices so that they could exercise their dissenter's rights under NRS 92A.440's step four. AeroGrow opposed the motion, arguing generally that it did not violate the Dissenter's Rights Statutes because RPIs failed to provide consents from their stockholders of record at step two and that, consequently, AeroGrow did not need to send RPIs the step-three notices. The district court granted RPIs' motion in its entirety. In its order, the court (1) found that AeroGrow had violated the Dissenter's Rights Statutes by failing to provide RPIs with the step-three notices, (2) waived RPIs' obligation to obtain consents from their stockholders of record, and (3) compelled AeroGrow to provide RPIs with the step-three notices within ten days from entry of the order. In essence, the order enjoined AeroGrow from proceeding with NRS 92A.440's step-four demand-for-payment process until AeroGrow afforded RPIs the opportunity to participate in that process.

Shortly thereafter, AeroGrow filed the instant petition for a writ of mandamus. AeroGrow contemporaneously filed a motion to stay enforcement of the district court's order. This court granted AeroGrow's stay motion and directed RPIs to file an answer.

## DISCUSSION

"This court may issue a writ of mandamus to compel the performance of an act which the law requires as a duty resulting from an office or where discretion has been manifestly abused or exercised arbitrarily or capriciously." *Scarbo v. Eighth Judicial Dist. Court*, 125 Nev. 118, 121, 206 P.3d 975, 977 (2009); *see* NRS 34.160. We have previously equated a "manifest abuse of discretion" with "[a] clearly erroneous interpretation of the law or a clearly erroneous application of a law or rule."

SUPREME COURT
OF
NEVADA

(O) 1947A

7

*State v. Eighth Judicial Dist. Court (Armstrong)*, 127 Nev. 927, 932, 267 P.3d 777, 780 (2011) (alteration in original) (quoting *Steward v. McDonald*, 958 S.W.2d 297, 300 (Ark. 1997)). Thus, while it is entirely within this court's discretion whether to entertain a writ petition, *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991), and while an appeal from a final judgment is generally an adequate legal remedy precluding writ relief, *Pan v. Eighth Judicial Dist. Court*, 120 Nev. 222, 224, 88 P.3d 840, 841 (2004), writ relief may nevertheless be warranted when there is "a clear error . . . that unless immediately corrected will wreak irreparable harm," *Archon Corp. v. Eighth Judicial Dist. Court*, 133 Nev. 816, 820, 407 P.3d 702, 706 (2017) (quoting *In re Linee Aeree Italiane (Alitalia)*, 469 F.3d 638, 640 (7th Cir. 2006)).

We conclude that this standard is met here. Although AeroGrow may eventually be able to challenge RPIs' ability to participate in the dissenter's rights process in the context of a final judgment, allowing RPIs to participate in this protracted process if they are not authorized to do so would cause AeroGrow irreparable harm. Namely, AeroGrow observes (and RPIs do not dispute) that without writ relief, AeroGrow will be required to "allow an additional 57 stockholders [i.e., RPIs], holding more than 1.7 million shares, to proceed through the dissenter's process," which is "more than double the total number of current dissenting shares." In other words, it may be impossible for AeroGrow to adequately complete the dissenter's rights process with the non-RPI dissenting shareholders, who followed the appropriate procedures, if RPIs are erroneously permitted to participate in the process. Accordingly, we elect to entertain AeroGrow's writ petition.

AeroGrow's petition presents an issue regarding the construction of NRS 92A.400-.440, which is an issue we review de novo.

SUPREME COURT
OF
NEVADA

(O) 1947A

*Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 40, 175 P.3d 906, 908 (2008) ("Even when raised in a writ petition, this court reviews questions of statutory interpretation de novo."). This court interprets statutes by their plain meaning unless there is ambiguity, the plain meaning would provide an absurd result, or the plain meaning "clearly was not intended." *Young v. Nev. Gaming Control Bd.*, 136 Nev. 584, 586, 473 P.3d 1034, 1036 (2020) (internal quotation marks omitted); *see also Leven v. Frey*, 123 Nev. 399, 403, 168 P.3d 712, 715 (2007) ("[W]hen a statute's language is plain and its meaning clear, the court will apply that plain language.").

As indicated, NRS 92A.400(2)(a) provides that "[a] beneficial stockholder may assert dissenter's rights as to shares held on his or her behalf only if the beneficial stockholder . . . [s]ubmits to the subject corporation the written consent of the stockholder of record to the dissent *not later than the time the beneficial stockholder asserts dissenter's rights.*" (Emphasis added.) The issue here is *when* in the four-step process a beneficial stockholder "assert[s]" his or her dissenter's rights and, consequently, *when* the beneficial stockholder must obtain the consent of the stockholder of record to assert his or her dissenter's rights. AeroGrow contends that a beneficial stockholder "assert[s]" dissenter's rights at NRS 92A.420's step two. NRS 92A.420 provides, in relevant part, that

> [i]f a proposed corporate action creating dissenter's rights is submitted to a vote at a stockholders' meeting, *a stockholder who **wishes to assert dissenter's rights** with respect to any class or series of shares . . . must deliver to the subject corporation, *before the vote is taken*, written notice of the stockholder's **intent to demand payment** for his or her shares if the proposed action is effectuated.

SUPREME COURT
OF
NEVADA

(O) 1947A

9

NRS 92A.420(1)(a) (emphases added). NRS 92A.420(3) further provides that "[a] stockholder who does not satisfy the requirements of . . . NRS 92A.400 [i.e., the statute requiring consent from the stockholder of record] is not entitled to payment for his or her shares under this chapter." In essence, AeroGrow contends that NRS 92A.420's reference to "assert[ing] dissenter's rights . . . before the vote is taken" means that "assert[ion]" takes place at step two. And because RPIs failed to submit consents from the shareholders of record when they notified AeroGrow of their intent to dissent from the proposed merger, AeroGrow contends that RPIs necessarily failed to comply with NRS 92A.400(2)(a).

In contrast, RPIs contend that NRS 92A.420's references to "wishes to assert" and "intent to demand payment" necessarily mean that *actually* "assert[ing]" comes at a later point in time, i.e., at NRS 92A.440's step four when the dissenting stockholder actually demands payment. NRS 92A.440 provides, in relevant part, that

> [a] stockholder who receives a dissenter's notice pursuant to NRS 92A.430 [i.e., step three] *and who **wishes to exercise** dissenter's rights* must . . . [d]emand payment; . . . [c]ertify whether the stockholder or beneficial owner on whose behalf he or she is dissenting, as the case may be, acquired beneficial ownership of the shares before the date required to be set forth in the dissenter's notice for this certification; and . . . [d]eposit the stockholder's certificates, if any, in accordance with the terms of the notice.

NRS 92A.440(1) (emphasis added). In essence, RPIs contend that a stockholder "assert[s]" dissenter's rights when he or she "demand[s] payment" at step four.

Considering both interpretations, we agree with AeroGrow that a beneficial stockholder "assert[s]" his or her dissenter's rights at step two and that, consequently, the stockholder must submit his or her consent from the stockholder of record at that point. While RPIs' proffered construction is not wholly unreasonable, we are not persuaded by it, as it treats "assert" as being synonymous with "exercise," even though NRS 92A.400-.440 use those terms distinctly.[2] *See Labastida v. State*, 115 Nev. 298, 302-03, 986 P.2d 443, 446 (1999) (recognizing that a statute's use of two different terms "evinces the legislature's intent that different meanings apply to the two terms"). This distinction is most prevalent in NRS 92A.430's step three, which requires the corporation to "deliver a written dissenter's notice to . . . any beneficial stockholder *who has previously **asserted** dissenter's rights pursuant to NRS 92A.400*." (Emphasis added.) In other words, the Legislature expressly provided that at step three, a corporation must only send dissenter's notices to beneficial stockholders who have *already asserted* their dissenter's rights, which makes it impossible for a beneficial stockholder to *first assert* dissenter's rights at step four.[3]

---

[2]We agree with RPIs that "wishes to assert," as it is used in NRS 92A.420, could connote actually "assert[ing]" at a later point in time. However, NRS 92A.440 also uses the term "wishes to" in outlining the actions to be taken by a stockholder who "wishes to exercise dissenter's rights." Because the Dissenter's Rights Statutes do not expressly set forth a subsequent point in time when a stockholder actually "exercise[s]" his or her dissenter's rights, RPIs' proffered construction of "wishes to" would render it impossible for a stockholder ever to "exercise" his or her dissenter's rights. Thus, the most sensible reading of "wishes to" connotes present, not future, action.

[3]RPIs contend that despite the Legislature's express distinction between "assert" and "exercise," we should construe NRS 92A.400-.440 consistently with the 1984 Model Business Corporation Act, which provides

SUPREME COURT
OF
NEVADA

(O) 1947A

Further reinforcing our conclusion that "assertion" occurs at step two is NRS 92A.420(3), which provides that "[a] stockholder who does not satisfy the requirements of . . . NRS 92A.400 [i.e., the statute requiring consent from the stockholder of record] is not entitled to payment for his or her shares under this chapter." If the Legislature had intended for the stockholder of record's consent to be obtained at NRS 92A.440's step four, it stands to reason that the Legislature would not have clarified in NRS 92A.420's step two that the failure to obtain such consent would preclude the stockholder from being paid for his or her shares.

Accordingly, we conclude that NRS 92A.400-.440 unambiguously provide that a beneficial stockholder "asserts" dissenter's rights at step two and that the stockholder must provide the consent from his or her stockholder of record at that point.[4] *Leven*, 123 Nev. at 403, 168 P.3d at 715 ("[W]hen a statute's language is plain and its meaning clear, the court will apply that plain language."). The district court therefore erred in construing the statutes as permitting RPIs to submit their consents after the merger vote was taken and in waiving RPIs' statutory obligation to obtain those consents. Accordingly, the district court's order constituted

that a beneficial stockholder need not submit the stockholder of record's consent until step four. Model Bus. Corp. Act Ann., § 13.03, (Am. Bar Ass'n, amended 2016). We are not persuaded by this contention. *See* Norman Singer & Shambie Singer, *2B Sutherland Statutory Construction* § 52:5 (7th ed. 2016) (observing that "when a legislature models a statute after a uniform act, but does not adopt particular language, courts conclude the omission was 'deliberate,' or 'intentional'").

[4]We are not persuaded by RPIs' arguments that this result is absurd or "clearly was not intended," *Young*, 136 Nev. at 586, 473 P.3d at 1036 (internal quotation marks omitted), such that we should ignore the statutes' plain meaning.

 

a manifest abuse of discretion, *Armstrong*, 127 Nev. at 932, 267 P.3d at 780, which, without immediate correction, will cause AeroGrow immediate harm, thereby entitling AeroGrow to extraordinary relief, *Archon Corp.*, 133 Nev. at 820, 407 P.3d at 706. We therefore grant the petition and direct the clerk of this court to issue a writ of mandamus directing the district court to vacate its May 5, 2021, Order Granting Plaintiff's and Plaintiff-Intervenors' Joint Motion to Compel/Determine Compliance with NRS 92A, and to proceed with the underlying litigation consistent with the above analysis.

_____, J.
Parraguirre

We concur:

_____, J.
Stiglich

_____, J.
Silver

SUPREME COURT
OF
NEVADA

(O) 1947A