56 P.3d 868 (2002)
118 Nev. 648
Sonu SHARMA, Appellant,
v.
The STATE of Nevada, Respondent.
No. 36182.
Supreme Court of Nevada.
October 31, 2002.
*869 Richard F. Cornell, Reno, for Appellant.
Frankie Sue Del Papa, Attorney General, Carson City; Richard A. Gammick, District Attorney, and Gary H. Hatlestad, Deputy District Attorney, Washoe County, for Respondent.
Before SHEARING, AGOSTI and ROSE, JJ.

OPINION
PER CURIAM.
The State prosecuted appellant Sonu Sharma for the attempted murder of Amit Ranadey under two alternate theories of criminal liability: (1) that he directly attempted to kill Ranadey by shooting him in the back, and (2) that he aided and abetted another person's attempt to kill Ranadey. Sharma was convicted, pursuant to a jury verdict, of attempted murder with the use of a deadly weapon. On appeal, he contends that the district court failed to properly instruct the jury on the essential elements of aiding and abetting attempted murder. We agree, and we issue this opinion to clarify Nevada law respecting the requisite mens rea or state of mind for aiding and abetting a specific intent crime.

THE FACTS
On November 18, 1998, Amit Ranadey was shot in the back. Testimony at trial established that Rajesh Vig, Anthony Barela, Arthur Richardson, and appellant Sharma were present at the time of the shooting. After an investigation, the State charged all four men with the attempted murder of Ranadey with the use of a deadly weapon. The cases were severed for trial, and the State tried Sharma first.
The day after the shooting, police detectives approached Sharma at work. They explained that Ranadey had been shot and asked Sharma to speak with them. Sharma agreed and accompanied them to the police station. At first, Sharma denied knowing anything about the shooting. He claimed that he and Vig spent the evening together at a restaurant, walking around the mall, and visiting with Vig's family.
After further interrogation, however, Sharma told a different story. He explained that Ranadey and Barela sold marijuana together, but when Barela began working with someone else and no longer included Ranadey in the transactions, Ranadey asked Vig to help him attack Barela. Vig then recruited Sharma to assist because he owned a vehicle. Although they originally planned to beat Barela with baseball bats, the plan changed when they subsequently included Richardson. Richardson owned a gun and wanted to use it instead of the bats. Sharma claimed that he was surprised when Richardson shot Ranadey instead of Barela.
Later, Sharma related another version of the shooting. He admitted that although the original plan was to attack Barela, the plan changed when Vig warned Barela what was going to happen. Barela decided to let the plan proceed and to attack Ranadey instead. Sharma also admitted to the police that when Richardson joined the plan, the group intended to kill Ranadey.
At trial, Ranadey testified that, as far as he knew, Vig, Richardson, and Sharma intended to help him attack Barela. He had no idea that the plan had changed. Although he did not know who actually shot him, he remembered that Sharma had told him it was Richardson. Ranadey, however, suspected that Sharma had a gun and may have shot him because of the way Sharma was holding his hand in his jacket. But Ranadey also remembered seeing Richardson with a gun in his hand after the shooting.
Sharma testified in his own defense at trial. In contrast to some of his prior statements to police, he denied that the group planned to attack Ranadey. Rather, he repeatedly testified that Ranadey wanted to have a fistfight with Barela. Sharma also claimed that he did not think anyone intended to kill Barela. Although Sharma admitted that he knew Richardson owned a gun, he maintained that there was never a plan to use it. When asked about his inconsistent *870 statements to the police, Sharma claimed he did not understand most of the interview because he does not speak English well, and the detective was "putting words in [his] mouth."
The jury found Sharma guilty of attempted murder with the use of a deadly weapon. The district court sentenced him to serve two consecutive terms of forty-eight months to one hundred and twenty months in the Nevada State Prison. This appeal followed.
On June 14, 2001, following oral argument in this appeal, this court issued an order directing the parties to file supplemental briefs. The order specifically requested the parties to address two concerns raised by the court during oral argument: (1) whether the jury was correctly instructed on the "mens rea" or "intent" required to convict an accused of aiding and abetting an attempted murder, and (2) whether the jury was correctly instructed that it must find that acts were in fact committed that tended, but failed to complete the crime of murder. Supplemental briefing is now complete, and this appeal is fully at issue and ready for decision.

DISCUSSION
Before we can determine whether the jury was properly instructed respecting the element of intent involved in aiding and abetting attempted murder, we must first determine what the intent requirements actually are under Nevada law. Unfortunately, this court's case law has inconsistently defined these requirements with respect to specific intent crimes.[1] Accordingly, we begin our analysis with a discussion of the existing law in this state.

The elements of attempted murder
An "attempt" under Nevada law is an act done with the intent to commit a crime, and tending, but failing to accomplish it.[2] Murder is the unlawful killing of a human being with malice aforethought, either express or implied.[3] In Keys v. State,[4] however, we clarified that attempted murder can only be committed with express malice. Keys held that implied malice alone is insufficient to support a conviction for attempted murder.
An attempt, by nature, is a failure to accomplish what one intended to do. Attempt means to try; it means an effort to bring about a desired result. Thus one cannot attempt to be negligent or attempt to have the general malignant recklessness contemplated by ... "implied malice."[5]
Therefore, Keys held, "[a]ttempted murder is the performance of an act or acts which tend, but fail, to kill a human being, when such acts are done with express malice, namely, with the deliberate intention unlawfully to kill."[6]

Aider and abettor liability
Nevada law does not distinguish between an aider or abettor to a crime and an actual perpetrator of a crime; both are equally culpable. Under NRS 195.020, every person concerned in the commission of a crime, whether he directly commits the act constituting the offense or aids or abets in its commission is guilty as a principal. Although NRS 195.020 also provides that a lack of criminal intent by the person directly committing the crime shall not be a defense to an aider or abettor, the statute does not specify what mental state is required to be convicted as an aider or abettor. Perhaps for that reason, this court has over time defined that mental state inconsistently. Thus, Nevada *871 law is vulnerable to the general criticism that "[c]onsiderable confusion exists as to what the accomplice's mental state must be in order to hold him accountable for an offense committed by another."[7]
In one line of cases, for example, this court has required the State to show that the defendant knowingly and intentionally aided another to commit the charged crime.[8] In Tanksley v. State, a case representative of this line of cases, this court held that a defendant could not be convicted of attempting to obtain money by false pretenses without a finding that she either intended to obtain the money by false pretenses, or intended to aid or abet in the obtaining of money by false pretenses.[9]Tanksley stressed that "[a]n attempt crime is a specific intent crime; thus, the act constituting [the] attempt must be done with the intent to commit that crime."[10]
In Mitchell v. State, however, this court rejected the "assertion that one may never be convicted of attempted murder as an aider and abettor in the absence of a specific intent to kill." Instead, this court adopted and approved the "natural and probable consequences doctrine," concluding that "a conviction for attempted murder will lie even if the defendant did not have the specific intent to kill provided the attempted murder was the natural and probable consequence of the aider and abettor's target crime."[11]Mitchell directed the trial courts to use a specific model instruction incorporating the natural and probable consequences doctrine in all future cases involving charges of aiding and abetting attempted murder.[12]
This court again applied the natural and probable consequences doctrine to a specific intent crime in Garner v. State.[13] In addressing Garner's challenge to his kidnapping conviction, this court held that "when a person enters into a common plan or scheme but does not intend a particular crime committed by the principal, the person is liable for the crime if `in the ordinary course of things [the crime] was the natural or probable consequence of such common plan or scheme."'[14]
This doctrine has been harshly criticized by "[m]ost commentators ... as both `incongruous and unjust' because it imposes accomplice liability solely upon proof of foreseeability or negligence when typically a higher degree of mens rea is required of the principal."[15] It permits criminal "liability to be predicated upon negligence even when the *872 crime involved requires a different state of mind."[16] Having reevaluated the wisdom of the doctrine, we have concluded that its general application in Nevada to specific intent crimes is unsound precisely for that reason: it permits conviction without proof that the accused possessed the state of mind required by the statutory definition of the crime.
To be convicted of an attempt to commit a crime in Nevada, the State must show, among other things, that the accused committed an act with the intent to commit that crime.[17] Under the natural and probable consequences doctrine, however, an accused may be convicted upon a far different showing, i.e., that the charged crime, although not intended, was nonetheless foreseeable. As the Supreme Court of New Mexico observed in rejecting the doctrine for similar reasons, the doctrine thus "allows a defendant to be convicted for crimes the defendant may have been able to foresee but never intended."[18]
This court has repeatedly emphasized that, under Nevada law, ""`[t]here is no such criminal offense as an attempt to achieve an unintended result.""'[19] We have also reasoned that "[a]n attempt, by nature, is a failure to accomplish what one intended to do."[20] Because the natural and probable consequences doctrine permits a defendant to be convicted of a specific intent crime where he or she did not possess the statutory intent required for the offense, we hereby disavow and abandon the doctrine. It is not only "inconsistent with more fundamental principles of our system of criminal law,"[21] but is also inconsistent with those Nevada statutes that require proof of a specific intent to commit the crime alleged.
We observe as well that the doctrine may potentially undermine certain legislative sentencing determinations. By assigning a larger statutory sentence to attempted murder than to battery, the legislature arguably has determined that certain acts accompanied by the intent to kill are more serious than acts involving the willful use of force without such intent.[22] Application of the doctrine, however, could negate such legislative determinations.
Accordingly, we reaffirm Tanksley and hold that in order for a person to be held accountable for the specific intent crime of another under an aiding or abetting theory of principal liability, the aider or abettor must have knowingly aided the other person with the intent that the other person commit the charged crime. To the extent that Garner and Mitchell conflict with this holding and endorse the natural and probable consequences doctrine, they are hereby disapproved and overruled.

The jury instructions regarding intent to aid or abet attempted murder
Instruction No. 11 defined the elements of attempted murder as follows:
The elements of ATTEMPTED MURDER which the State must prove beyond a reasonable doubt in this case are that on or about the 18th day of November, 1998, the defendant did:
1) in Washoe County, State of Nevada;
2) willfully, unlawfully, with premeditation, deliberation, and malice aforethought;
3) directly attempt to kill AMIT RANADEY;
4) or aid, abet, counsel or encourage another person or persons to attempt to do so.
Thus, as noted above, the State alleged that Sharma either directly committed attempted murder, or that he aided or abetted an attempted murder. Each theory required the State to prove separate elements. With respect to the first theory, the State *873 was required to show that Sharma acted with the deliberate intention unlawfully to kill another person, and that the act tended, but failed, to kill that person.[23] Under the second theory, the State was required to show that Sharma, with the intent to kill, aided and abetted another person in the commission of an act that tended, but failed to kill the victim.[24] Because the State proceeded on these alternate theories, the jury should have been clearly instructed on both.[25]
Instruction No. 11, however, inadequately and incorrectly instructed the jury with respect to the second theory. It failed to inform the jury that to convict Sharma of aiding and abetting an attempted murder, Sharma must have aided and abetted the attempt with the specific intent to kill. The State concedes this point,[26] but argues that Instruction Nos. 15, 18, and 19 cured the defect. We disagree.
Instruction No. 15 provided:
If you believe that at the time of the shooting in this case that the defendant intended to kill any person, or to aid and abet one of his co-defendants to kill any person, it is of no legal consequence that he or one of his co-defendants mistakenly injured a different person. His intent to kill transfers to the person actually harmed.
This is a transferred intent instruction; its purpose was to address evidence that Ranadey may not have been the intended victim. It did not cure the failure of Instruction No. 11 to properly define the elements of aiding or abetting attempted murder.
Instruction No. 19 provided:
Every person concerned in the commission of a felony, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who, directly or indirectly counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony is a principal, and shall be proceeded against and punished as such.
This instruction also did not cure the defect in Instruction No. 11. It simply explained the law set forth in NRS 195.020 providing that an accomplice is as culpable as the person who actually perpetrates the offense. The instruction contains no language addressing intent.
Instruction No. 18, on the other hand, did specifically address the mental state of an accomplice. It provided in part that "[e]very person who ... willfully participates in the commission of a crime may be found to be guilty of that offense." It also instructed that the jury must find "the defendant voluntarily participated in [the crime] with the intent to violate the law." Again, however, this instruction inadequately defined the requisite mens rea. Under this instruction, the jury could have convicted Sharma of attempted murder based on a finding that he acted voluntarily and with the intent to act unlawfully, but not necessarily with the specific intent to kill. Therefore, we conclude that the other instructions did not cure the defect in Instruction No. 11.
We further conclude that this error was not harmless beyond a reasonable doubt.[27] Sharma spent substantial portions of his case disputing that he harbored the specific intent to kill at the time of the shooting. *874 He repeatedly testified that the group went to the desert so that Barela and Ranadey could engage in a fistfight. He also emphasized that he did not think that anyone intended to kill Ranadey. Further, the subject of Sharma's intent occupied a large portion of both parties' closing arguments. Because Sharma presented sufficient evidence for the jury to conclude that he did not act with the specific intent to kill Ranadey, and because the instructions did not clearly explain that the jury had to find that he aided or abetted with the specific intent to kill, we conclude that the error was not harmless.[28]

The jury instructions regarding the actual commission of an attempt
Our order of June 14, 2001, also directed the parties to address whether Instruction No. 11, when read together with the other instructions, properly informed the jury that it must find that an attempted murder was actually committed. The State argues that together with Instruction No. 20, the instruction properly informed the jury. Instruction No. 20 provided: "An act done with the intent to commit a crime, and tending but failing to accomplish it, is an attempt to commit that crime."
Although the State's position is arguable, in light of our conclusion that the jury was incorrectly instructed on the mens rea required for aiding and abetting attempted murder, it is unnecessary to reach this issue. We note, however, that a single instruction properly defining all the essential elements of the crime charged might have been far less confusing and problematic. Although all jury instructions should be tailored to the particular facts of each case, we offer the following as an example.
In this case, the defendant is accused of attempted murder under two theories of liability. In order to find the defendant guilty of attempted murder, the State must prove beyond a reasonable doubt that:
(1) with the deliberate intention to unlawfully kill the victim, the defendant committed an act which tended, but failed to kill the victim; or
(2) with the deliberate intention to unlawfully kill the victim, the defendant aided, abetted, counseled, or encouraged another person to kill the victim and that other person committed an act that tended, but failed to kill the victim.

Implied malice
Sharma contends that Instruction No. 16 improperly permitted the jury to convict him on a finding of implied malice. The instruction provided:
If a person, without legal justification or excuse, intentionally uses a deadly weapon upon the person of another at a vital part, under circumstances showing no considerable provocation, then intent to kill may be implied as an inference from the act itself.
Although the instruction contains language that is not particularly relevant to an attempted murder prosecution, we are not persuaded that it was so misleading as to permit the jury to convict upon a finding of implied malice. NRS 200.020(1) defines "express malice" as "that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof." (Emphasis added.) Additionally, NRS 193.200 provides that intent "is manifested by the circumstances connected with the perpetration of the offense." These provisions implicitly acknowledge that intent can rarely be proven by direct evidence of a defendant's state of mind, but instead is inferred by the jury from the individualized, external circumstances of the crime, which are capable of proof at trial.[29] In Dearman v. State, this court held that one such circumstance may well be the use of a deadly weapon: "[i]ntent to kill ... may be ascertained or deduced from the facts and circumstances of the killing, *875 such as use of a weapon calculated to produce death, the manner of use, and the attendant circumstances."[30] On balance, therefore, we view the challenged instruction as a correct statement of the law directing the jury that a specific intent to kill may be inferred from an external circumstance, i.e., the intentional use of a deadly weapon upon the person of another at a vital part. Accordingly, we reject appellant's contention that the instruction constitutes reversible error.

CONCLUSION
The jury was erroneously instructed on the elements of aiding and abetting an attempted murder. We therefore reverse the judgment of conviction and remand this matter for further proceedings consistent with this opinion.[31]
NOTES
[1] Compare Tanksley v. State, 113 Nev. 844, 944 P.2d 240 (1997) (holding that a conviction for an attempt to obtain money by false pretenses could not stand where the jury was not instructed that the accused had to have either the intent to obtain money by false pretenses, or the intent to aid and abet in the obtaining of money by false pretenses), with Mitchell v. State, 114 Nev. 1417, 971 P.2d 813 (1998) (holding that a conviction for attempted murder will stand even if the accused did not have the specific intent to kill, provided that the attempted murder was the natural and probable consequence of the aider and abettor's target crime).
[2] NRS 193.330(1).
[3] NRS 200.010.
[4] 104 Nev. 736, 766 P.2d 270 (1988).
[5] Id. at 740, 766 P.2d at 273.
[6] Id.
[7] See Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law § 6.7(b), at 579 (2d ed.1986).
[8] See, e.g., Labastida v. State, 115 Nev. 298, 303, 986 P.2d 443, 446 (1999) (approving of jury instructions that required a finding that the accomplice knowingly and intentionally aided in the acts that resulted in the charged crime); Evans v. State, 113 Nev. 885, 944 P.2d 253 (1997) (implicitly holding that the accomplice must assist with the intent that the other person commit the charged crime); Ewish v. State, 111 Nev. 1365, 904 P.2d 1038 (1995) (recognizing that an accomplice can be convicted of a lesser related crime if he did not harbor the specific intent required to be convicted of his cohort's crime); Hooper v. State, 95 Nev. 924, 604 P.2d 115 (1979) (approving of an instruction that required the jury to find that the accomplice acted knowingly, voluntarily, and with a common intent to commit the crime).
[9] 113 Nev. 844, 849-50, 944 P.2d 240, 243 (1997).
[10] Id. at 849, 944 P.2d at 243 (citing NRS 193.330; Curry v. State, 106 Nev. 317, 319, 792 P.2d 396, 397 (1990)).
[11] 114 Nev. 1417, 1426-27, 971 P.2d 813, 819-20 (1998).
[12] Id. at 1427 n. 3, 971 P.2d at 820 n. 3; see also People v. Prettyman, 14 Cal.4th 248, 58 Cal. Rptr.2d 827, 926 P.2d 1013, 1018 n. 3 (1996). Notably, the jury in the instant case was not instructed in accordance with the model instruction set forth in Mitchell.
[13] 116 Nev. 770, 6 P.3d 1013 (2000).
[14] Id. at 782, 6 P.3d at 1021 (quoting State v. Cushing, Et Al., 61 Nev. 132, 148, 120 P.2d 208, 216 (1941)).
[15] Audrey Rogers, Accomplice Liability for Unintentional Crimes: Remaining Within the Constraints of Intent, 31 Loy. L.A. L.Rev. 1351, 1361 & n. 33 (1998) (citing LaFave & Scott, supra note 7, at 590; Joshua Dressler, Reassessing the Theoretical Underpinnings of Accomplice Liability: New Solutions to an Old Problem, 37 Hastings L.J. 91, 97-98 (1985); Sanford H. Kadish, Complicity, Cause and Blame: A Study in the Interpretation of Doctrine, 73 Cal. L.Rev. 323, 351-52 (1985)).
[16] LaFave & Scott, supra note 7, at 590.
[17] NRS 193.330(1).
[18] State v. Carrasco, 124 N.M. 64, 946 P.2d 1075, 1079-80 (1997).
[19] Keys, 104 Nev. at 740, 766 P.2d at 273 (quoting Ramos v. State, 95 Nev. 251, 253, 592 P.2d 950, 951 (1979) (quoting People v. Viser, 62 Ill.2d 568, 343 N.E.2d 903, 910 (1975))).
[20] Keys, 104 Nev. at 740, 766 P.2d at 273.
[21] LaFave & Scott, supra note 7, at 590.
[22] Compare NRS 200.481, with NRS 193.165, NRS 193.330, and NRS 200.030.
[23] Keys, 104 Nev. at 740, 766 P.2d at 273.
[24] Id.; see also Tanksley, 113 Nev. at 849-50, 944 P.2d at 243.
[25] Culverson v. State, 106 Nev. 484, 797 P.2d 238 (1990).
[26] Specifically, in its supplemental brief, the State concedes that the instruction "as presented, does not inform the jury respecting the precise mens rea or intent it must find to convict [Sharma] of attempted murder on a theory of accomplice (aiding and abetting) liability. This instruction, without more, would warrant a finding of plain reversible error, because it would allow for a conviction based on mere aiding and abetting, or aiding and abetting a battery when [Sharma] lacked the intent to kill [Ranadey] when [he] acted."
[27] Collman v. State, 116 Nev. 687, 722-23, 7 P.3d 426, 449 (2000) (in assessing harmless error, the court must ask: "`[i]s it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?'" (quoting Neder v. United States, 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999))).
[28] Wegner v. State, 116 Nev. 1149, 1156, 14 P.3d 25, 30 (2000) (holding that "[w]here a defendant has contested the omitted element and there is sufficient evidence to support a contrary finding, the error is not harmless") (citing Neder, 527 U.S. at 19, 119 S.Ct. 1827).
[29] See, e.g., People v. Beeman, 35 Cal.3d 547, 199 Cal.Rptr. 60, 674 P.2d 1318, 1325 (1984) ("Direct evidence of the mental state of the accused is rarely available except through his or her testimony.").
[30] Dearman v. State, 93 Nev. 364, 367, 566 P.2d 407, 409 (1977); see also Cooper v. State, 94 Nev. 744, 745, 587 P.2d 1318, 1319 (1978) (in a prosecution for attempted murder, a jury was free to draw reasonable inferences of specific intent from the facts proved at trial, including the appellant's overt act of twice turning and firing gunshots in the direction of the victim, who was pursuing the appellant).
[31] We have reviewed Sharma's remaining claims of error and conclude that they are without merit.