# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| CHRISTIAN JOEL SCOTT, A/K/A CHRISTIAN MUNOZ, Appellant, vs. THE STATE OF NEVADA, Respondent. | No. 73182 |

**FILED**

JUL 26 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with the use of a deadly weapon, robbery with the use of a deadly weapon, and attempted murder with the use of a deadly weapon. Second Judicial District Court, Washoe County; Scott N. Freeman, Judge.

Appellant Christian Scott went to a park in Reno to meet with 16-year-old Juan Rubio Martinez and his friend Armando Martinez so Scott could buy a Gucci belt from Juan. Scott looked at the belt, and the boys discussed a price. Eventually, Scott told Juan and Armando that they were being robbed, pulled out and pointed a gun at the two boys, and then ran away carrying the belt. Juan and Armando got in Juan's car to chase him. Scott fired two shots toward Juan's car, striking Juan in the head and killing him. Scott initially denied involvement in the shooting, but eventually admitted that he robbed Juan and was the shooter.

Scott now appeals his convictions, arguing that (1) insufficient evidence supports his conviction for attempted murder; (2) "this [c]ourt should abolish the felony murder rule or, in the alternative, conclude that it was inapplicable in this case"; (3) the district court abused its discretion

SUPREME COURT
OF
NEVADA

(O) 1947A

18-28803

or erred in instructing the jury; and (4) the district court abused its discretion or erred by excluding certain evidence.

*There was sufficient evidence to support Scott's conviction for attempted murder*

Scott argues that this court must reverse his conviction because attempted murder is a specific intent crime, and the State failed to prove that he had the specific intent to kill Juan or Armando.

"The standard of review [when analyzing the sufficiency of evidence] in a criminal case is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Nolan v. State*, 122 Nev. 363, 377, 132 P.3d 564, 573 (2006) (alteration in original) (internal quotation marks omitted). "[I]t is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992). "Where there is substantial evidence to support a verdict in a criminal case, . . . [this] court will not disturb the verdict nor set aside the judgment." *Nix v. State*, 91 Nev. 613, 614, 541 P.2d 1, 2 (1975) (internal quotation marks omitted).

"Attempted murder is the performance of an act or acts which tend, but fail, to kill a human being, when such acts are done with express malice, namely, with the deliberate intention unlawfully to kill." *Keys v. State*, 104 Nev. 736, 740, 766 P.2d 270, 273 (1988); *see* NRS 193.200; NRS 200.020. In *Sharma v. State*, this court recognized that intent to kill "can rarely be proven by direct evidence of a defendant's state of mind, but instead is inferred by the jury from the individualized, external circumstances of the crime, which are capable of proof at trial." 118 Nev. 648, 659, 56 P.3d 868, 874 (2002). Therefore, "a specific intent to kill may

be inferred from an external circumstance, *i.e.*, the intentional use of a deadly weapon upon the person of another at a vital part." *Id.* at 659, 56 P.3d at 875; *see also Dearman v. State*, 93 Nev. 364, 367, 566 P.2d 407, 409 (1977) ("Intent to kill, as well as premeditation, may be ascertained or deduced from the facts and circumstances of the killing, such as use of a weapon calculated to produce death, the manner of use, and the attendant circumstances.").

In this case, Armando testified that someone fired shots at Juan's car while they were driving after Scott. Further, the jury heard Scott's taped interview with police, where Scott admitted that he saw Armando and Juan get into a car and come after him, so he "just snapped" and fired two bullets. Accordingly, viewing the evidence in favor of the prosecution, there was sufficient evidence for the jury to find that, by pointing the gun and twice shooting at the car in which Juan and Armando were riding, Scott intended to kill them, and was thus guilty of attempted murder beyond a reasonable doubt.

*We decline to abolish the felony-murder rule*

Scott asks this court to abolish the felony-murder rule. However, in doing so, he does not argue that the statute codifying the felony-murder rule is unconstitutional, nor does he argue that this court's jurisprudence involving the felony-murder doctrine is "unworkable" or "badly reasoned" and should be overruled. *State v. Lloyd,* 129 Nev. 739, 750, 312 P.3d 467, 474 (2013) (explaining that "[s]tare decisis plays a critical role in our jurisprudence . . . but when governing decisions prove to be unworkable or are badly reasoned, they should be overruled" (alternation in original) (internal quotation marks omitted)). The only authority Scott provides to present this argument is a factually distinguishable Massachusetts case, in which the court prospectively narrowed the felony-

murder rule, while expressly declining to abolish it. *See Commonwealth v. Brown*, 81 N.E.3d 1173, 1179-81, 1190 (Mass. 2017). Accordingly, we decline to consider whether to abolish the felony-murder rule as Scott has not cogently argued the issue. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court.").

*The district court properly instructed the jury*

Scott challenges the district court's denial of two jury instructions. "The district court has broad discretion to settle jury instructions, and this court reviews the district court's decision for an abuse of that discretion or judicial error." *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). "This court evaluates appellate claims concerning jury instructions using a harmless error standard of review." *Barnier v. State*, 119 Nev. 129, 132, 67 P.3d 320, 322 (2003). "This court has consistently held that the defense has the right to have the jury instructed on its theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may be." *Crawford*, 121 Nev. at 751, 121 P.3d at 586 (internal quotation marks omitted). "The district court may, however, refuse a jury instruction on the defendant's theory of the case that is substantially covered by other instructions. In addition, a district court must not instruct a jury on theories that misstate the applicable law." *Vallery v. State*, 118 Nev. 357, 372, 46 P.3d 66, 77 (2002) (footnote omitted).

The first proffered instruction provided:

> An intervening act will supersede the original culpable act where the intervening act is an unforeseeable, independent, non-concurrent cause of the injury; the intervening cause must, effectively, break the chain of causation.

In the district court, Scott argued that this instruction was necessary for him to argue a break between the robbery and the subsequent shooting. The district court refused to give the instruction, concluding that intervening acts and felony-murder are separate doctrines, and "the intervening unforeseeable break in the causation type of law and its progeny are related to DUIs, traffic-type offenses." On appeal, Scott argues that he was entitled to instruct the jury on his theory of the case, and this instruction was proper because "the robbery was, for all purposes, complete when the decedent decided he was going to run [Scott] over." Scott characterizes Juan's conduct in chasing Scott in his car as an intervening act that "permitted [Scott] to take steps to defend himself."

We conclude that the proffered instruction misstated the law with regard to felony murder. Causation under the felony-murder doctrine only "requires that the killing be linked to or part of the series of incidents so as to be one continuous transaction." *Payne v. State*, 81 Nev. 503, 506, 406 P.2d 922, 924 (1965). "Because the felony-murder rule seeks to make punishment more certain, [i]t was not intended to relieve the wrong-doer from any . . . consequences of his act." *Sanchez-Dominguez v. State*, 130 Nev. 85, 93, 318 P.3d 1068, 1074 (2014) (alteration in original) (internal quotation marks omitted). Thus, "causation is assumed where a killing would not have occurred but for the perpetrator's purposeful decision to cause a felony." *Id.* at 95, 318 P.3d at 1075. Accordingly, the district court did not abuse its discretion or err in rejecting Scott's intervening act

instruction as it was an incorrect statement of the law.[1] *See Vallery*, 118 Nev. at 372, 46 P.3d at 77.

Scott's second tendered and rejected jury instruction stated as follows:

> A defendant in a criminal action is presumed to be innocent unless the contrary is proved; and in case of a reasonable doubt whether the defendant's guilt is satisfactorily shown, the defendant is entitled to be acquitted.

The district court refused to give the instruction, stating that "the presumption of innocence instruction has been affirmed by our Supreme Court . . . [and] it is already covered in these instruction[s]." On appeal, Scott argues that the proffered instruction quoted NRS 175.191 (titled "Presumption of innocence: Acquittal in case of reasonable doubt) and was "a positive statement of law." We conclude that the district court did not abuse its discretion or err in refusing the proffered instruction because, although the instruction accurately stated the law, it was duplicative of jury

---

[1]Scott also argues that he did not commit the killing as "part of a continuous transaction" as defined in the jury instruction on felony murder. However, he does not argue that the jury instruction was incorrect. Rather, he argues that the evidence presented at trial showed that he was not fleeing from the robbery at the time he fired the shots. We disagree. This court has determined that "the perpetration of a felony does not end the moment all of the statutory elements of the felony are complete. Instead, the duration of felony-murder liability can extend beyond the termination of the felony itself if the killing and the felony are part of one continuous transaction." *Sanchez-Dominguez*, 130 Nev. at 93-94, 318 P.3d at 1074. Here, Scott took the belt and shot at Juan and Armando moments later while they chased him in Juan's car. Thus, there was sufficient evidence for the jury to conclude that the killing and felony were "part of one continuous transaction." *Id.*

instruction no. 16, which adequately covered the concept of the presumption of innocence. *See Vallery*, 118 Nev. at 372, 46 P.3d at 77.

*The district court did not abuse its discretion in excluding Juan's statements, the brass knuckles, or the knife*

Scott argues that the district court abused its discretion in excluding evidence that (1) Juan and Armando were chasing after him as he fled from the park after the robbery, and (2) there were brass knuckles and a knife in Juan's car when they were driving after Scott.

"We review a district court's decision to admit or exclude evidence for an abuse of discretion." *Mclellan v. State*, 124 Nev. 263, 269, 182 P.3d 106, 110 (2008). Generally, "failure to object precludes appellate review of the matter unless it rises to the level of plain error." *Id.* (internal quotation marks omitted). Under plain error review, "we must examine whether there was error, whether the error was plain or clear, and whether the error affected the defendant's substantial rights." *Id.* (internal quotation marks omitted).

*Juan's statements*

Scott argues that the district court should have allowed Armando to testify about statements Juan made immediately after being robbed because those statements were excited utterances and thus admissible nonhearsay under NRS 51.095. The State contends "the question [regarding Juan's statement] was never actually posed, and so no objection was announced and there was no ruling." We agree with the State. Scott does not argue, nor does he provide record citations to demonstrate, that defense counsel attempted to ask Armando about the decedent's

statements.[2] Therefore, the State made no objection and the district court did not rule on the matter. Further, defense counsel was able to elicit testimony from Armando that he and Juan were driving toward Scott "to . . . chase after him," and Scott fails to demonstrate that the statements made by Juan outside of his presence were relevant. Accordingly, we conclude that there was no plain error or an abuse of discretion on the part of the district court. *See Mclellan*, 124 Nev. at 269, 182 P.3d at 110.

*Photos of weapons*

During trial, Scott attempted to admit photos of weapons, including brass knuckles and a knife, found in Juan's car. The district court excluded the photos, stating that Scott could not introduce evidence regarding Juan's or Armando's possession of weapons unless he could show that he knew about the weapons prior to firing his gun.

On appeal, Scott argues that the photos of the victims' weapons were relevant to the issue of self-defense, even without a showing that he was aware of the weapons, because they tend to support the idea that the victims intended to cause him deadly harm or injury. Scott contends that the issue was not just whether he knew that the victims had weapons in the car, but rather, "whether they were going to run [him] over," which was made more likely by their possession of weapons.

To establish self-defense, "specific acts which tend to show that the deceased was a violent and dangerous person may be admitted, provided that the specific acts of violence of the deceased were known to the accused

---

[2]Scott makes the excited utterance argument for the first time on appeal, and therefore, we decline to consider it. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981).

or had been communicated to him." *Burgeon v. State*, 102 Nev. 43, 45-46, 714 P.2d 576, 578 (1986). Here, Scott does not claim to have had knowledge of the weapons in Juan's car. Therefore, the photos of the weapons were not relevant to his self-defense claim.[3] Further, Scott's argument that the weapons were relevant to the question of whether Juan was trying to run Scott over lacks merit because there is no indication that Juan intended to use them against Scott. Regardless, defense counsel elicited testimony that Juan and Armando were trying to chase after Scott in Juan's car. Finally, we conclude that the district court did not abuse its discretion in excluding the evidence of the weapons because, even if the weapons may be probative of Juan's character, the fact that Scott was unaware of the weapons renders the photos inadmissible because their "probative value [was] substantially outweighed by the danger of unfair prejudice [or] confusion of the issues." NRS 48.035(1). Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty

---

[3]We note that the jury was instructed on Scott's theory of self-defense.

cc: Hon. Scott N. Freeman, District Judge
Washoe County Public Defender
Attorney General/Carson City
Washoe County District Attorney
Washoe District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A