# IN THE SUPREME COURT OF THE STATE OF NEVADA

KENNETH EARL DAVIS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 80051

FILED

JUN 11 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with the use of a deadly weapon, robbery with the use of a deadly weapon, and grand larceny of a motor vehicle.[1] Second Judicial District Court, Washoe County; David A. Hardy, Judge.

*Sufficiency of the evidence*

Appellant Kenneth Davis argues that insufficient evidence supports his convictions. When reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, this court considers "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

*First-degree murder*

Relying on *State v. White*, 130 Nev. 533, 330 P.3d 482 (2014), Davis first contends that burglary could not serve as the predicate offense for felony murder because he had an absolute right to enter the home where he lived. *See id.* at 539, 330 P.3d at 486 (providing that "one cannot burglarize his own home so long as he has an absolute right to enter the

---

[1]Pursuant to NRAP 34(f)(1), we conclude that oral argument is not warranted.

21-16896

home"). We disagree because the State prosecuted Davis under the theory that he burgled the victims' bedroom and the female victim testified that Davis did not have an absolute right to enter the bedroom. *See id.* (stating that "the appropriate question is whether the alleged burglar has an absolute, unconditional right to enter" the area in question). Thus, despite Davis residing in the victims' home, he could burglarize the victims' bedroom. *See* NRS 205.060(1) (2013) (providing that entry into "any . . . room" with felonious intent is a burglary); *see also People v. Abilez*, 161 P.3d 58, 85-86 (Cal. 2007) (affirming conviction where the defendant burglarized the victim's bedroom in her home, even though he also lived in the home). The female victim further testified that Davis entered the bedroom, shot the male victim multiple times, turned the gun to her and demanded she give him the keys to the victims' vehicle, took the keys from atop a dresser, and fled the scene in the victims' vehicle. Based on the evidence presented at trial, a rational juror could find that Davis entered the bedroom with felonious intent to commit assault, battery, and larceny. *See Sharma v. State*, 118 Nev. 648, 659, 56 P.3d 868, 874 (2002) (observing that "intent can rarely be proven by direct evidence of a defendant's state of mind, but instead is inferred by the jury from the individualized, external circumstances of the crime, which are capable of proof at trial"). Accordingly, we conclude the State presented sufficient evidence that Davis murdered the victim while perpetrating a burglary.[2]   *See* NRS 200.030(1)(b); NRS 205.060(1).

---

[2]To the extent that Davis contends his first-degree-murder conviction must be reversed because it cannot be determined which theory the jury relied on, we disagree because "a jury need not be unanimous as to a particular theory of culpability for a single offense to sustain a conviction." *Anderson v. State*, 121 Nev. 511, 515, 118 P.3d 184, 186 (2005).

We also conclude that sufficient evidence supported the State's theory that Davis murdered the male victim during the perpetration of a robbery. *See* NRS 200.380. The female victim testified that Davis shot the male victim, aimed the gun at her, and demanded the car keys. Thus, the evidence belies Davis's contentions that he did not commit an unlawful taking in her presence or that the robbery was only an afterthought because he took the car keys after shooting the male victim. *See generally Nay v. State*, 123 Nev. 326, 330-33, 167 P.3d 430, 432-35 (2007) (discussing felony murder and afterthought robbery); *see also Abilez*, 161 P.3d at 507-08 (providing that "[w]hile it may be true that one cannot rob a person who is already dead when one first arrives on the scene, one can certainly rob a living person by killing that person and then taking his or her property" (alteration in original) (internal quotation marks omitted)). Therefore, we conclude a rational juror could find the essential elements of first-degree murder based on a felony-murder theory with robbery as the predicate offense.[3]

*Grand larceny of a motor vehicle*

Davis contends that insufficient evidence supports his conviction for grand larceny of a motor vehicle because he did not intend to permanently deprive the owner of the vehicle. We disagree because the female victim testified that Davis took the vehicle against her will. And law enforcement apprehended Davis driving the victims' vehicle in California

---

[3]We have also considered Davis's related challenges to the jury instructions on felony murder and the underlying offenses, and we conclude that his contentions do not warrant relief. *See Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001) (reviewing a district court's settling of jury instructions for an abuse of discretion or judicial error); *see also Ramirez v. State*, 126 Nev. 203, 208, 235 P.3d 619, 622-23 (2010) (reviewing unpreserved jury instruction challenges for plain error).

after he fled Nevada. Based on that evidence, a rational juror could find that Davis intended to permanently deprive the victims of the vehicle. *See Sharma*, 118 Nev. at 659, 56 P.3d at 874 (observing that "intent can rarely be proven by direct evidence of a defendant's state of mind, but instead is inferred by the jury from the individualized, external circumstances of the crime, which are capable of proof at trial"). Accordingly, sufficient evidence supports the jury's verdict. *See* NRS 193.200; NRS 205.228(1).

*Charging documents*

Davis argues that the State improperly altered its theory of prosecution by including the theories of burglary with the intent to commit larceny and felony murder by means of robbery in the information because those theories were not set forth in the amended criminal complaint. As a result, Davis contends that he did not have adequate notice of the State's alternative theories of liability. We disagree and conclude Davis had adequate notice of the prosecution's theories. *See* NRS 173.075(1) (providing the general requirements for an information); *Koza v. State*, 104 Nev. 262, 264, 756 P.2d 1184, 1185 (1988) (providing "that the charging document must give adequate notice to the defendant of the theories of prosecution").

The amended criminal complaint alleged that Davis committed felony murder by killing the victim in the perpetration of a burglary, robbed the female victim, and stole the victims' vehicle. The State filed the information with the additional theories of prosecution roughly seven months before trial, providing Davis with adequate notice of the charges against him and advising him of what he needed to know to defend against them. The evidence adduced at the preliminary hearing and trial supported the State's alternative theories of liability. *See Walker v. State*, 116 Nev. 670, 673, 6 P.3d 477, 479 (2000) ("The State may proceed on alternate

theories of liability as long as there is evidence in support of those theories."); *Collura v. State*, 97 Nev. 451, 453, 634 P.2d 455, 456 (1981) ("We may look to the entire record to determine whether the accused had notice of what later transpired at trial."). And Davis has not provided any authority requiring the State to file a motion to revise its theory of prosecution before filing the initial information. *Cf.* NRS 173.095(1) ("The court may permit *an indictment or information to be amended* at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." (emphasis added)); *see also Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) (providing that a party must "present relevant authority and cogent argument; issues not so presented need not be addressed by this court"). Moreover, Davis concedes he never objected below, *see Collura*, 97 Nev. at 453, 634 P.2d at 456 (explaining that, if a defendant "proceeds to trial without challenging the sufficiency of the information or indictment[,] an element of waiver is involved"), and we conclude that he has not shown that any alleged inadequacy in the information resulted in prejudice that warrants relief, *see Koza*, 104 Nev. at 264, 756 P.2d at 1186 ("Where a defendant has not been prejudiced by the charging instrument's inadequacy the conviction will not be reversed.").

*Prosecutorial misconduct*

Davis argues that the State engaged in numerous instances of prosecutorial misconduct. "When considering claims of prosecutorial misconduct, this court engages in a two-step analysis. First, we must determine whether the prosecutor's conduct was improper. Second, if the conduct was improper, we must determine whether the improper conduct warrants reversal." *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008) (footnotes omitted). If the error was preserved, reversal is not

warranted where the misconduct is harmless. *Id.* If the error was not preserved, we apply plain-error review, under which reversal may be warranted only if the defendant establishes "an error that is plain from a review of the record" and "affected his or her substantial rights, by causing actual prejudice or a miscarriage of justice." *Id.* at 1190, 196 P.3d at 477 (internal quotation marks omitted).

Davis first challenges the prosecutor's argument that he lied during his interview with law enforcement. "A prosecutor's use of the words 'lying' or 'truth' should not automatically mean that prosecutorial misconduct has occurred. But condemning a defendant as a 'liar' should be considered prosecutorial misconduct." *Rowland v. State*, 118 Nev. 31, 40, 39 P.3d 114, 119 (2002) (discussing "[t]he line between appropriate argument on the credibility of a witness and improper prosecutorial argument"). Even assuming the prosecutor's argument amounts to misconduct, we conclude it was harmless. During closing argument, defense counsel relied largely on Davis's police interview to establish self-defense and asserted that "he didn't lie to" the officers.[4] In rebuttal, the State responded that Davis was lying because his version of events did not

---

[4]To the extent Davis assigns error to the prosecutor redacting the portions of his police interview where he stated that the victim gave him the firearm he used and that he and the victim were previously involved in gang activity, we discern no prosecutorial misconduct and conclude the district court acted appropriately within its discretion. The district court allowed Davis to ask about the victim giving him the firearm during his cross-examination of the interviewing officer, *see Bushnell v. State*, 95 Nev. 570, 572, 599 P.2d 1038, 1039 (1979) (providing that "the permissible extent of cross-examination is largely within the sound discretion of the trial court"), and precluded any references to the alleged gang affiliation, *see Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008) (reviewing "a district court's decision to admit or exclude evidence for an abuse of discretion.").

match the physical evidence. *See Greene v. State*, 113 Nev. 157, 178, 931 P.2d 54, 67 (1997) ("The strongest factor against reversal on the grounds that the prosecutor made an objectionable remark is that it was provoked by defense counsel."), *receded from on other grounds by Byford v. State*, 116 Nev. 215, 235, 994 P.2d 700, 713 (2000). Moreover, despite the district court overruling Davis's objection, the prosecutor stopped after discussing the issue at the bench. And the State presented overwhelming evidence that Davis did not act in self-defense, including the female victim's testimony and physical evidence. *See King v. State*, 116 Nev. 349, 356, 998 P.2d 1172, 1176 (2000) (providing that prosecutorial misconduct may be harmless where there is overwhelming evidence of guilt).

Davis also argues it was improper for the State to ask a law enforcement witness about the defense's ability to request testing of a golf club. To the extent the line of inquiry improperly suggested Davis should have independently tested the golf club and introduced the results in evidence, *see Whitney v. State*, 112 Nev. 499, 502, 915 P.2d 881, 883 (1996) (providing that "it is generally improper for a prosecutor to comment on the defense's failure to produce evidence"), we conclude reversal is not warranted given that the question came in response to Davis's cross-examination about law enforcement not testing the golf club for DNA or fingerprints, *see Greene*, 113 Nev. at 178, 931 P.2d at 67 ("The strongest factor against reversal on the grounds that the prosecutor made an objectionable remark is that it was provoked by defense counsel."). Having considered Davis's remaining claims of prosecutorial misconduct, we conclude that they do not warrant relief.

*Sentencing*

Davis argues that the district court abused its discretion at sentencing by relying on improper evidence. Although Davis points to

arguments made by the State, he does not show that the district court relied on any impalpable or highly suspect evidence. *See Silks v. State*, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976) ("So long as the record does not demonstrate prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence, this court will refrain from interfering with the sentence imposed."). The record shows that the district court asked what, if any, weight should be given to various factors, e.g., Davis's criminal history, age, and the lack of input from the victims about sentencing. We discern no abuse of discretion. *See Denson v. State*, 112 Nev. 489, 492, 915 P.2d 284, 286 (1996) ("Possession of the fullest information possible concerning a defendant's life and characteristics is essential to the sentencing judge's task of determining the type and extent of punishment.").

Davis also contends that his sentence of life without the possibility of parole for first-degree murder amounts to cruel and unusual punishment. Regardless of its severity, "[a] sentence within the statutory limits is not cruel and unusual punishment unless the statute fixing punishment is unconstitutional or the sentence is so unreasonably disproportionate to the offense as to shock the conscience." *Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996) (internal quotation marks omitted). Here, the district court imposed a sentence within the statutory guidelines, *see* NRS 200.030(4), and Davis does not challenge the constitutionality of the statute. Therefore, we conclude the sentence imposed is not grossly disproportionate to the crimes and does not constitute cruel and unusual punishment.

*Cumulative error*

Finally, Davis argues that cumulative error warrants reversal. After reviewing the relevant factors, *see Valdez*, 124 Nev. at 481, 196 P.3d

SUPREME COURT
OF
NEVADA

(O) 1947A

at 1195 (discussing the factors to consider for a cumulative error claim), and the errors identified or assumed above, we disagree, *see Hernandez v. State*, 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002) (concluding "that any errors which occurred were minor and, even considered together, do not warrant reversal"). Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Cadish

_____, J.          _____, J.
Pickering                                       Herndon

cc:     Hon. David A. Hardy, District Judge
        Karla K. Butko
        Attorney General/Carson City
        Washoe County District Attorney
        Washoe District Court Clerk